CITY OF WEST HAVEN *v.* HARTFORD
INSURANCE COMPANY
(14293)

PETERS, C. J., GLASS, COVELLO, BORDEN and SANTANIELLO, Js.

Argued November 5, 1991—decision released February 11, 1992

*Edward Gallant,* with whom, on the brief, were *Michael G. Kinsella, Ann Gallant* and *Keith Bradoc Gallant,* for the appellant (plaintiff).

*Timothy W. Donahue,* with whom, on the brief, was *Edward T. Falsey,* for the appellee (defendant).

SANTANIELLO, J. The principal issue in this appeal is whether the plaintiff city had a legal obligation under

General Statutes §§ 7-101a or 7-465[1] to indemnify two city police officers for the punitive damages for which they had been held liable in a federal civil rights suit.

[1] At the times relevant to this case, General Statutes (Rev. to 1983) § 7-101a provided: "PROTECTION OF MUNICIPAL OFFICERS AND FULL-TIME MUNICIPAL EMPLOYEES FROM DAMAGE SUITS. REIMBURSEMENT OF DEFENSE EXPENSES. LIABILITY INSURANCE. TIME LIMIT FOR [FILING NOTICE AND COMMENCEMENT OF ACTION]. (a) Each town, city, borough, consolidated town and city and consolidated town and borough shall protect and save harmless any municipal officer, whether elected or appointed, of any board, committee, council, agency or commission, or any full-time municipal employee, of such municipality from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such officer or such employee while acting in the discharge of his duties.

"(b) In addition to the protection provided under subsection (a) of this section, each town, city, borough, consolidated town and city and consolidated town and borough shall protect and save harmless any such municipal officer or full-time municipal employee from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand or suit instituted against such officer or employee by reason of alleged malicious, wanton or wilful act or ultra vires act, on the part of such officer or employee while acting in the discharge of his duties. In the event such officer or employee has a judgment entered against him for such act in a court of law, such municipality shall be reimbursed by such officer or employee for expenses it incurred in providing such defense and shall not be held liable to such officer and employee for any financial loss or expense resulting from such act.

"(c) Each such municipality may insure against the liability imposed by this section in any insurance company organized in this state or in any insurance company of another state authorized to write such insurance in this state or may elect to act as self-insurer of such liability.

"(d) No action shall be maintained under this section against such municipality or employee unless such action is commenced within two years after the cause of action therefor arose nor unless written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued."

At the times relevant to this case, General Statutes (Rev. to 1983) § 7-465 provided: "ASSUMPTION OF LIABILITY FOR DAMAGE CAUSED BY EMPLOYEES. JOINT LIABILITY OF MUNICIPALITIES IN DISTRICT DEPARTMENT OF HEALTH OR REGIONAL PLANNING AGENCY. (a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen

The underlying facts are established by the trial court's memorandum of decision. In 1984, Tracy

covered under the provisions of section 7-308, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as here-inafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occur-rence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. This section shall not apply to physical injury to a person caused by an employee to a fellow employee while both employees are engaged in the scope of their employment for such municipality if the employee suffering such injury or, in the case of his death, his dependent has a right to benefits or compensa-tion under chapter 568 by reason of such injury. If an employee or, in the case of his death, his dependent has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such employee or, in the case of his death, his dependent shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious. This section shall not apply to libel or slander proceedings brought against any such employee and, in such cases, there is no assumption of liability by any town, city or borough. Any employee of such municipality, although excused from official duty at the time, for the purposes of this section shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a pub-lic duty imposed by law. Such municipality may arrange for and maintain appropriate insurance or may elect to act as a self-insurer to maintain such protection. No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefore arose nor unless written notice of the inten-tion to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attor-ney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file that it will pay any ver-dict rendered in such action against such employee. No mention of any kind shall be made of such statement by any counsel during the trial of such action. As used in this section, 'employee' shall include a member of a

McAneny instituted an action in the United States District Court for Connecticut against two West Haven police officers, Joseph Innamorato and Joseph Conzo,[2] alleging that his civil rights had been violated under 42 U.S.C. § 1983. The basis of McAneny's complaint was that Innamorato and Conzo had prepared and furnished a false affidavit to establish probable cause to support a warrant for his arrest. The following facts were alleged in the civil rights suit: On December 15, 1983, McAneny was on duty as manager of the Super 8 Motel in West Haven. On that date, he was advised by a guest of the motel that property was missing from the guest's room. McAneny contacted the West Haven police department and Innamorato and Conzo responded to the scene. The officers advised McAneny that there were no signs of forced entry and asked him to provide them with the name and address of the maid responsible for taking care of the room. Pursuant to company policy, McAneny declined to provide that information. Innamorato and Conzo threatened to arrest McAneny for not providing the requested information, but McAneny still refused. The complaint further alleged that: "From their prior investigation, the . . . [Police Officers] knew that December 29 was . . . [McAneny's] birthday. On December 29, 1983, at approximately 2:30 P.M., the . . . [Police Officers] visited . . . [McAneny] at his . . . place of employment. As [McAneny] extended his hand to greet them . . . [one of the Police Officers] placed a handcuff upon . . . [McAneny's] wrist and stated: 'Happy Birthday, sucker. You're under arrest.' [The Police Officers]

town board of education and any teacher, including a student teacher doing practice teaching under the direction of such a teacher, or other person employed by such board. Nothing in this section shall be construed to abrogate the right of any person, board or commission which may accrue under section 10-235."

[2] *Tracy McAneny* v. *Joseph Innamorato et al.,* United States District Court, District of Connecticut, Civil No. N-84-548 [EBB].

. . . thereupon arrested . . . [McAneny based on the arrest warrant supported by the false affidavit] . . . . [The Police Officers] . . . thereupon transported . . . [McAneny] in handcuffs and in police custody to the headquarters of the West Haven Police Department and subjected him to routine booking procedures and thereafter required . . . [McAneny] to appear in the Connecticut Superior Court at West Haven on many occasions as an accused criminal." On June 20, 1984, approximately six months after the arrest, the criminal charges against McAneny were dismissed.

The Hartford Insurance Company (Hartford), which insured West Haven under a Comprehensive Business Policy, furnished independent counsel to defend the police officers in the underlying federal lawsuit under a reservation of rights. After trial, the jury found in favor of McAneny against both police officers, and awarded $30,000 in compensatory damages and $60,000 in punitive damages. Hartford paid the compensatory damages portion of the judgment, plus attorney's fees awarded to McAneny's counsel pursuant to 42 U.S.C. § 1988, but refused to pay the punitive damages awarded against the police officers. West Haven paid the $60,000 punitive damages award, and then commenced the instant action to recover that sum from Hartford.

Both parties filed motions for summary judgment with respect to count one of the amended complaint, which alleged breach of contract by Hartford. By memorandum of decision dated August 14, 1990, the trial court granted Hartford's motion, holding that West Haven was not required to pay the punitive damages awarded in the civil rights suit in favor of McAneny against Innamorato and Conzo. Therefore, the court held that Hartford had no responsibility to indemnify West Haven under the terms of the insurance contract.

On December 27, 1990, summary judgment was granted as to count two of the amended complaint.

West Haven has appealed from the trial court's decisions of August 14, 1990, and December 27, 1990. On appeal, West Haven claims that the trial court improperly concluded that: (1) West Haven had no legal obligation to pay the punitive damages award; (2) Hartford had no contractual duty to reimburse West Haven for the punitive damages paid in the underlying federal action; and (3) Hartford did not waive its reservation of rights by advising West Haven that its counsel need not be present at trial. We transferred the appeal to this court pursuant to Practice Book § 4023. We affirm the judgments of the trial court.

I

We first address West Haven's claim that the trial court erred in granting Hartford's motion for summary judgment and concluding that West Haven had no legal obligation to pay the punitive damages award. "When reviewing a trial court's ruling on a motion for summary judgment, we must decide whether the trial court erred in determining that there was no 'genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Practice Book § 384; *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 111, 491 A.2d 368 (1985); *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980)." *Aetna Casualty & Surety Co.* v. *Jones*, 220·Conn. 285, 292–93, 596 A.2d 414 (1991). There was no genuine issue of fact as to count one of the amended complaint, on which summary judgment was granted. Therefore, the dispositive issue in this appeal is whether Hartford was entitled to judgment as a matter of law.

The United States Supreme Court has made it clear that a municipality is immune from punitive damages under 42 U.S.C. § 1983. *Newport* v. *Facts Concerts,*

*Inc.,* 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). The trial court therefore correctly concluded that if West Haven is to be held vicariously liable for punitive damages, it must be found liable under a statutory basis. West Haven claims that it was obligated to pay the punitive damages award pursuant to either § 7-465 or § 7-101a.

We first examine § 7-465, which provides, in pertinent part, that a municipality "shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay . . . for damages awarded for infringement of any person's civil rights . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, *and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty."* (Emphasis added.)

The plain and unambiguous language of § 7-465 provides that a municipality is not obligated to pay damages if the employee was acting in a wilful or wanton manner. This court will not ordinarily construe a statute whose meaning is plain and unambiguous. *Wright* v. *Commissioner of Correction,* 216 Conn. 220, 225, 578 A.2d 1071 (1990); *Lamb* v. *Burns,* 202 Conn. 158, 168, 520 A.2d 190 (1987). This statute, on its face, imposes no liability on West Haven in the circumstances of this case.

At all times relevant to this case, § 7-101a (a) provided that "[e]ach . . . city . . . shall protect and save harmless any . . . full-time . . . employee . . . from financial loss and expense . . . arising out of any claim . . . by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such . . . employee *while acting in the*

*discharge of his duties."* (Emphasis added.) Subsection (b) of § 7-101a provided that "[i]n addition to the protection provided under subsection (a) of this section, each . . . city . . . shall protect and save harmless any . . . employee from financial loss and expense . . . arising out of any claim . . . by reason of alleged malicious, wanton or wilful act or ultra vires act, on the part of such . . . employee *while acting in the discharge of his duties."* (Emphasis added.) Significantly, the second sentence of subsection (b) provides that *"[i]n the event such . . . employee has a judgment entered against him for such act in a court of law, such municipality shall be reimbursed by such . . . employee for expenses it incurred in providing such defense and shall not be held liable to such officer and employee for any financial loss or expense resulting from such act."* (Emphasis added.)

West Haven argues that the unambiguous language of subsection (a) requires that a municipality protect employees and hold them harmless from damages awarded by reason of infringement of civil rights. According to West Haven, since § 7-101a (b) is specifically designated as being *"[i]n addition* to the protection provided under subsection (a)"; (emphasis added); and since subsection (a) specifically refers to "civil rights" while subsection (b) does not, the trial court erred in concluding that § 7-101a (a) and (b) must be read together and that subsection (b) controls. We find this argument unpersuasive.

"When construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather ' "read the statute as a whole and so as to reconcile all parts as far as possible." ' *Martone* v. *Lensink,* 207 Conn. 296, 302, 541 A.2d 488 (1988); *Grodis* v. *Burns,* 190 Conn. 39, 44, 459 A.2d 994 (1983)." *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 241, 558 A.2d 986 (1989). Furthermore, " ' "[i]n

construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." ' *King* v. *Board of Education,* 203 Conn. 324, 332–33, 524 A.2d 1131 (1987); *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985)." *Ford Motor Credit Co.* v. *B. W. Beardsley, Inc.,* 208 Conn. 13, 20, 542 A.2d 1159 (1988). "The factors that this court looks to in construing a statute include 'its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment.' " *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982).

In 1977, the legislature amended § 7-101a; see Public Acts 1977, No. 77-399; to include the provisions regarding protection against alleged malicious, wanton, wilful, or ultra vires acts as subsection (b). The legislative history of Public Acts 1977, No. 77-399 indicates that the portion of House Bill No. 6314 that added the language that we must now interpret was intended, as the trial court noted, "to add the right to a defense only in a frivolous case claiming wilful and wanton acts which did not exist under subsection (a)." On the House floor, Representative Dorothy Barnes stated that "[t]he need for this bill arose most recently when two suits occurring in the New Haven area involved spurious claims against individual members of Zoning Commissions. Here members were sued individually for committing wanton and wilful acts in connection with [a] particular application. The cases were generally considered harassment suits. The cost of undergoing such an ordeal is too much for most people to absorb, and the importance of attracting qualified and competent people to serve in local public office makes it imperative that we remove . . . this kind of burden from those who are willing to serve in these communities." 20 H.R. Proc., Pt. 7, 1977 Sess., p. 2843.

"Although statements made on the floor of the legislature are not controlling on statutory interpretation, we may take judicial notice of those statements, which are strong indications of legislative intent. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 195 n.8, 530 A.2d 171 (1987); *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 276, 524 A.2d 621 (1987); *Verrastro* v. *Sivertsen,* supra, 223 n.9." *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 310–11, 592 A.2d 953 (1991).

In view of the foregoing, it becomes apparent that the trial court was correct when it observed that "[c]onstruing sub[section] (a) as requiring indemnification for damages resulting from wilful or wanton acts would fly in the face of subsection (b) which provides that the municipality is to pay for the *defense* of claims predicated on malicious, wanton or wilful acts, but if a judgment is entered finding the municipal employee acted in such a manner, then the employee must reimburse the municipality for the costs of the defense and the municipality shall not be liable for indemnification of any financial loss resulting from such malicious, wilful or wanton acts."

We thus conclude that the municipality is obligated, pursuant to § 7-465, to indemnify a municipal employee unless the municipal employee acted wilfully or wantonly. We also conclude that, pursuant to § 7-101a, the municipality is not liable for indemnification of any financial loss resulting from a malicious, wilful or wanton act.

We now address whether the trial court correctly held that West Haven was under no legal obligation under either statute to pay the punitive damages award. According to West Haven, the trial court improperly concluded that "wanton" acts excluded under the state statutes are necessarily equivalent to acts performed

in "reckless and callous disregard" of the rights of others, which give rise to damages in a § 1983 civil rights suit. We agree with the decision of the trial court.

Title 42 of the United States Code, § 1983 permits an award of compensatory damages; *Carey* v. *Piphus,* 435 U.S. 247, 254–56, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978); and an award of punitive damages in a "proper" case. *Carlson* v. *Green,* 446 U.S. 14, 22, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980). In *Smith* v. *Wade,* 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983), the United States Supreme Court held that punitive damages may be assessed in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." In the underlying federal civil rights action, *McAneny* v. *Innamorato,* the court, in accordance with the *Smith* v. *Wade* standard, charged the jury that "[y]ou may only award punitive damages if you find the defendants acted with evil motive or intent or with reckless and callous disregard of or indifference to the rights of the plaintiff." The jury's verdict form, which awarded punitive damages against both defendant officers, indicates that, in accordance with the court's instruction, the jury found that the police officers acted either with evil motive *or* intent *or* with reckless and callous disregard of or indifference to the rights of the plaintiff McAneny.

We have previously held that in order to award punitive damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Venturi* v. *Savitt,* 191 Conn. 588, 592, 468 A.2d 933 (1983); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825 (1967). "Wanton misconduct is reckless misconduct. *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 A. 698 (1928). 'It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the

consequences of the action.' *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 A. 136 (1929)." *Markey* v. *Santangelo,* 195 Conn. 76, 78, 485 A.2d 1305 (1985); see also *Seymour* v. *Carcia,* 24 Conn. App. 446, 451, 589 A.2d 7 (1991). If this element is present, an actual intention to do harm to the plaintiffs is not necessary. *Collens* v. *New Canaan Water Co.,* supra, 490. Although West Haven tries to create a distinction between the recklessness and callousness that give rise to punitive damages under § 1983 and "wanton" acts excluded under the state statutes, we do not find any meaningful distinction between the two.[3] We hold that wanton acts are the equivalent of acts done recklessly or with callous[4] disregard for the purposes of General Statutes §§ 7-101a and 7-465.

It is true that a comparison of the *Smith* v. *Wade* standard for the award of punitive damages and the instruction given by the trial court in the underlying federal civil rights case reveals a subtle difference. While the federal standard allows punitive damages when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others"; *Smith* v. *Wade,* supra, 56; the federal trial judge charged that jury that punitive damages may be awarded if the defendant acted with "reckless and callous disregard of or indifference to the rights of the plaintiff." West Haven argues, based on the above distinction, that the "reckless and callous" in that instruc-

[3] We have previously stated that "[w]hile we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing." *Dubay* v. *Irish,* 207 Conn. 518, 533, 542 A.2d 711 (1988); see also *State* v. *Alterio,* 154 Conn. 23, 25, 220 A.2d 451 (1966).

[4] "A recklessly or callously indifferent violation occurs . . . if the official believes (or reasonably should believe) that his conduct is *very likely* (but not certain) to result in such a violation." (Emphasis in original.) *Germany* v. *Vance,* 868 F.2d 9, 18 n.10 (1st Cir. 1989).

tion did not modify the noun, "indifference," and that, therefore, the jury in the underlying action may have premised its award of punitive damages on a finding that the defendant officers acted with simple indifference to the plaintiff McAneny's civil rights. According to West Haven, if the jury awarded the punitive damages based on a finding of indifference, this would not preclude liability by West Haven under either § 7-101a or § 7-465, since "indifference" is a lesser standard than Connecticut's standard of "malicious, wanton or wilful" under § 7-101a or "wilful or wanton" under § 7-465. We disagree.

The law is clear that a jury charge must be tested by viewing it as a whole. *Filakosky* v. *Valente,* 175 Conn. 192, 195–96, 397 A.2d 95 (1978); see *Fernandez* v. *Fitzgerald,* 711 F.2d 485 (2d Cir. 1983). In so doing, it becomes clear that the jury could not have awarded punitive damages based on mere indifference. Prior to instructing the jury on the punitive damages standard, which is now at issue, the federal judge charged that "[p]unitive damages are additional damages beyond those awarded as compensatory to be awarded to the plaintiff as a deterrent to the defendants to discourage them from committing the conduct complained of in the future." Immediately after giving the instruction now at issue, the federal judge charged the jury that "[y]ou have latitude in determining the amount [of] punitive damages to add to nominal or compensatory damages. You may add such amount as you shall unanimously agree is proper to punish the defendants for *extraordinary misconduct* and to serve as an example or warning to others not to engage in such conduct." (Emphasis added.)

Viewing the jury charge as a whole, we are persuaded that mere indifference is not equivalent to the extraordinary misconduct required for an award of punitive damages under federal law. Rather, the reasonable con-

struction of this jury charge is that "reckless and callous" did modify "indifference" so that the jury was instructed that "[y]ou may . . . award punitive damages if you find the defendants acted with evil motive or intent or with reckless and callous disregard of or [reckless and callous] indifference to the rights of the plaintiff." Such a construction is consistent with the federal *Smith* v. *Wade* standard and rises to the level of "wantonness," which would preclude liability by West Haven under the state statutes.

## II

West Haven next argues that since the trial court erred in finding that West Haven was under no legal obligation to pay the punitive damages award, it never properly addressed the contractual duty of Hartford to indemnify West Haven.[5]

The Comprehensive Business Policy at issue provides, in section I, that "[t]he company will pay on behalf of the insured *all sums* which the insured shall become *legally* obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury . . . ." (Emphasis added.) In section V, personal injury is defined to include "false arrest, detention or imprisonment, or malicious prosecution." Since the jury in the underlying federal action awarded McAneny punitive damages as a result of false arrest, West Haven argues that Hartford had a duty to indemnify it for such an award. West Haven further argues that the phrase "all sums" becomes significant when examined in light of the exclusions section of the policy, which fails to include punitive damages. According to West Haven, since the policy makes no reference to

---

[5] The trial court simply stated that since the city was not required to pay the punitive damages awarded in the civil rights suit, but rather paid it as a mere volunteer, Hartford had no responsibility to indemnify West Haven under the terms of the contract.

punitive damages, an ambiguity exists, which must be resolved in favor of the insured, so that "all damages" includes punitive damages. See *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.,* 203 Conn. 667, 526 A.2d 522 (1987).

West Haven's argument has one serious flaw. The insurance contract unambiguously provides that Hartford was bound to pay only those sums that its insured, West Haven, became *legally obligated* to pay as damages. As already discussed, West Haven was under no legal obligation under either § 7-101a or § 7-465 to pay the punitive damages award. Therefore, Hartford was never contractually bound to pay that sum on behalf of West Haven. Furthermore, having concluded that West Haven was under no legal obligation to pay the punitive damages award under either § 7-101a or § 7-465, we need not consider West Haven's claim that the public policy of Connecticut does not prohibit a municipality from insuring itself against punitive damage awards against municipal employees.

## III

West Haven's final argument is that the trial court erred in concluding that Hartford did not waive its reservation of rights by advising West Haven that its counsel need not be present at trial.

Some factual background is necessary to understand this claim. By letter dated November 7, 1984, Hartford informed West Haven that it would defend the McAneny lawsuit under a reservation of rights.[6] Sub-

---

[6] The letter stated:

"Please be on notice that the Hartford Insurance Group, in investigating and defending this matter, does so without prejudice to its right to deny coverage on all or part of the premises underlying the Suit instituted in the United States District Court, New Haven, Conn.

"The Complaint alleges willful, intentional and malicious acts and an intent to injure and humiliate the plaintiff. The policy does not provide coverage for Civil Right[s] Deprivation nor punitive damages."

sequently, counsel for Hartford informed the corporation counsel for West Haven that it *was unnecessary* for him to attend the actual trial.[7] According to West Haven, such an action by Hartford amounted to a waiver of its reservation of rights. We disagree.

It is generally held that if an insurer conducts an investigation or defense under a notice of reservation of rights, it will not thereby be estopped to set up any policy defenses that may be available to it. See 7C J. Appleman, Insurance Law and Practice (1979) § 4694, p. 336. If, however, the insurer conducts itself in a manner inconsistent with the reservation of rights or makes assurances to the insured that the claim will be taken care of, the reservation of rights may be waived. Id., p. 362.

In *Basta* v. *United States F & G Co.,* 107 Conn. 446, 450, 140 A. 816 (1928), we stated the rule that the insurer may avoid a waiver of the reservation of rights if it clearly informs the insured that the appearance of its attorneys on the insured's behalf is under a reservation of rights, and the insurer performs no acts inconsistent with such reservation. The court then stated that "[a]n insurer is not estopped to set up the defense that the assured's loss was not covered by the contract of indemnity by the fact that the insurer participated in the action against the assured, if at the same time it gives notice to the assured that it does not waive the benefits of such defense." Id., 450; see also *Fellows* v. *Mauser,* 302 F. Sup. 929, 935–36 (D. Vt. 1969).

The statement made by counsel for Hartford to the corporation counsel for West Haven does not rise to

---

[7] Brian T. Fischer, assistant corporation counsel of the city of West Haven, stated in his affidavit: "Although I attended an unsuccessful pretrial settlement conference on June 4, 1986 . . . I did not attend the actual trial because The Hartford's counsel informed me that it was unnecessary for me to do so."

the level of an act "inconsistent with [Hartford's] reservation" such as to become a waiver of the reservation. See *Fellows* v. *Mauser,* supra, 936; *Tomerlin* v. *Canadian Indemnity Co.,* 61 Cal. 2d 638, 394 P.2d 571, 39 Cal. Rptr. 731 (1964); *Ebert* v. *Balter,* 83 N.J. Super. 545, 558–60, 200 A.2d 532 (1964). Counsel for Hartford did not *tell* counsel for West Haven not to attend the trial. Rather, the statement simply informed counsel for West Haven that it was *not necessary* for him to attend the trial, leaving the final choice up to West Haven. Hartford made no representation that full coverage existed for West Haven and West Haven was not prevented from participating in any way. We therefore hold that there has been no waiver of Hartford's reservation of rights.

The judgments are affirmed.

In this opinion the other justices concurred.