[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff commenced this action by filing a five count complaint against Thomas Murray ("Murray"), the Galbreath Company ("Galbreath"), and Joshua Morris Publishing, Inc. ("Morris").
The plaintiff and Morris signed a purchase and sale agreement for the sale of real property located in Wilton, with certain mortgage and environmental conditions. Murray, a principal of Galbreath, acted as broker and agent for Morris. Murray provided the plaintiff's bank with an environmental questionnaire containing materially misleading and false information. He later sent the bank's environmental consultant a letter `amending' several answers. The plaintiff alleges intentional and negligent misrepresentation as well as violations of the Connecticut Unfair Trade Practices Act ("CUTPA") against Murray and Galbreath (collectively, "the defendants"), who have moved to strike counts three through eight, and the prayers for relief of counts four and eight.
"If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Waters v. Autuori,236 Conn. 820, 826 (1996). In evaluating the motion to strike, "[t]he court will construe the complaint in the manner most favorable to the pleader." Greentree Condominium Assn., Inc. v.RSP Corporation, 36 Conn. Sup. 160, 162 (1980). A motion to strike may be used to challenge the legal sufficiency of a prayer for relief. A motion to strike a prayer for relief is properly granted where "assuming the truth of the allegations in the complaint, the relief sought could not be legally awarded to the plaintiff." Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298 n. 4 (1984).
Count three of the plaintiff's revised complaint alleges intentional misrepresentation against Murray, and count five CT Page 497 alleges negligent misrepresentation against him, as well. The defendants' motion to strike claims that counts three and five are insufficient as a matter of law for failure to properly plead an agency relationship. The defendants argue that the plaintiff's failure to adequately allege an agency relationship between Murray and Morris renders the plaintiff's claims of intentional and negligent misrepresentation legally insufficient.
The plaintiff contends that counts three and five allege claims against Murray in his individual capacity, alleging personal liability. It argues that the agency argument is misguided and that sufficient allegations have been made to support a cause of action under each count.
The court finds that the plaintiff has alleged sufficient facts to state a cause of action under counts three and five. The defendants' arguments regarding agency are without merit. Those arguments might be appropriate in challenging the legal sufficiency of the misrepresentation counts against the sellerMorris, who would be liable only as Murray's principal. There is no authority, however, for the defendants' contention that the plaintiff must allege an agency relationship in order to state a claim for misrepresentation against Murray in his individual capacity.
The elements of intentional or fraudulent misrepresentation are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury."Miller v. Appleby, 183 Conn. 51, 54-55 (1981). "[T]he specific acts relied upon must be set forth in the complaint." (Citation omitted; internal quotation marks omitted.) Scoil Corp. v. FirstFed. Savings Loan, Superior Court, judicial district of New Haven at Meriden, Docket No. 248532 January 3, 1996, Silbert, J.;15 Conn. L. Rptr. 584). The plaintiff has indeed alleged sufficient facts for a claim of intentional misrepresentation.
The plaintiff has alleged that Murray filled out the environmental questionnaire, gave false and misleading answers, knowingly and intentionally misrepresented, and gave materially false answers knowing that the plaintiff would rely on them. The plaintiff further alleges that it suffered damages as a result of the misrepresentations of Murray. Thus, the plaintiff has alleged facts sufficient to state a cause of action of intentional CT Page 498 misrepresentation against Murray. Again, allegations regarding an agency relationship are not required to hold Murray liable in his individual capacity.
Negligent misrepresentation "may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Citations omitted; internal quotation marks omitted.) Williams Ford, Inc. v. Hartford CourantCo., 232 Conn. 559, 575 (1995). One who, in the course of his business, profession or employment supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. The plaintiff has alleged sufficient facts to support a cause of action for negligent misrepresentation as well, against Murray.
Counts four and six allege intentional and negligent misrepresentation against Galbreath under the doctrine of respondeat superior. The defendants move to strike on the grounds that counts four and six are insufficient as a matter of law because there is no specific allegation that Murray was acting to further Galbreath's business.
According to the defendants, there is absolutely no allegation that Murray was acting to further the business of Galbreath by making intentional and/or negligent misrepresentations to the seller's lender concerning the environmental condition of the property. The plaintiff has merely alleged the actions of Murray, as described above, were done with the knowledge and/or acquiescence of Galbreath and were within the scope of his authority as a principal and/or employee of Galbreath. The defendants contend that this allegation is insufficient "absent a specific allegation that Murray was furthering the business of Galbreath. The defendants rely on Lanev. Hocursak, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 315466 (March 22, 1995, Maiocco, J.).
The plaintiff contends that there are sufficient allegations to state a cause of action under respondeat superior. It argues that, taking the facts favorable to the pleader, the facts sufficiently allege that the acts were performed in furtherance of the business of Galbreath. CT Page 499
"Under the doctrine of respondeat superior, a master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business. . . . [I]t must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." LarsenChelsey Realty Co. v. Larsen, 232 Conn. 480, 500-01 (1995). "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment." (Internal quotation marks omitted.) A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 209-10 (1990).
"It is clear that an employee must be acting in furtherance of his employer's interests for an employer to be held liable under the theory of respondeat superior. It is not so clear, however, what form the allegations against the employer must take." Goldberg v. Josephthal, Lyon Ross, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 514864 (March 3, 1994, Sheldon, J.). There is no requirement that the plaintiff specifically use "in furtherance" language in his pleadings. In the alternative, if the plaintiff must allege "in furtherance of the employer's business," the plaintiff has alleged facts sufficient to do so.
"In A-G Foods, Inc., the court did not separate the terms `within the scope of employment' and `in furtherance of the employer's business.' Instead, the court consistently used these two phrases together as one. In other words, the court did not see these as two distinguishable factors in the determination of liability, but as one." Goldberg v. Josephthal, Lyon Ross,
supra. Similarly, the court used the two phrases as one in LarsenChelsey Realty Co. v. Larsen, supra. In fact, one early Supreme Court decision stated that "[a] master is liable only for those torts of his servant which are done with a view of furthering hismaster's business within the field of his employment. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Bradlow v. American District Telegraph Co.,131 Conn. 192, 196 (1944). The two phrases should be read together, rather than as two separate elements that must be pleaded to support a claim under respondeat superior.
There is no persuasive authority to support the defendant's contention that the plaintiff must specifically plead "in furtherance of the employer's business" as a separate element of CT Page 500 respondeat superior. The defendant's reliance on Lane v. Hocursak
is misplaced. In Lane, the court stated, "the plaintiff has not pleaded that the defendant's employee acted to further the defendant[']s business. Without this allegation, the plaintiff's complaint is silent as to how the defendant is legally responsible. . . ." Without more detailed facts, it is impossible to determine that the pleadings were lacking only the specific and separate allegation of "in furtherance of the employer's business." To the contrary, the court stated that the ground for the defendant's motion to strike was "that count one fails to state that the defendant's employee was acting in the scope ofhis employment." (Emphasis added.) Lane v. Hocursak, supra. It appears that the court was using "in the scope of employment" and "in furtherance of the employer's business" interchangeably. Thus, Lane v. Hocursak can be interpreted as standing for the proposition that a plaintiff must allege that the employee acted within the scope of employment.
The most reasonable conclusion to draw from Lane v. Hocursak
is that the plaintiff failed to allege that the employee's acts were in any way related to his duties as an employee. The employee's action — verbally abusing and assaulting a customer — is not readily interpreted as relating to the employee's position at the business. Either "in the scope of employment" or "in furtherance of the employer's business" is sufficient.[1] Because "in the scope of employment" and "in furtherance" language have been used together, the plaintiff need not specifically allege that Murray acted in furtherance of Galbreath's business.
In the alternative, the plaintiff has alleged sufficient facts to support that Murray was acting in furtherance of Galbreath's business. In count four, the plaintiff has alleged that: (1) Murray, a principal of Galbreath, was acting as a broker and agent for Morris; (2) Murray was a principal and/or employee of Galbreath and acting in such capacity in his dealings with Morris and the plaintiff; and (3) the actions of Murray were taken with the knowledge and/or acquiescence of Galbreath and were in Murray's scope of authority as a principal and/or employee of Galbreath. In count six, the plaintiff has alleged (1) and (2) above, and that the negligence of Murray is attributable to Galbreath as he was acting as its agent and/or employee.
"Facts necessarily implied by the allegations in a complaint CT Page 501 are sufficiently pleaded and need not be expressly alleged."Costanzo v. Ern-Len Corp., Superior Court, judicial district of New Haven, Docket No. 357966 (January 11, 1995, Hodgson, J.;13 Conn. L. Rptr. 316, 317). From the plaintiff's allegations, it is arguably implied that Murray's actions would benefit Galbreath and thus further its business. The plaintiff has alleged Murray was acting in his capacity as an employee in his dealings with the plaintiff and Morris. It is further alleged that Murray's acts were done with Galbreath's knowledge/acquiescence and were within the scope or his authority as an employee (count four) or that Murray's negligent actions were taken as an employee of Galbreath. Taking the facts favorable to the pleader, the plaintiff has stated sufficient facts to allege that Murray acted in furtherance of Galbreath's business.
This view is supported by the factual distinctions between the behavior in the present case and those actions taken by employees that courts have determined do not further the employer's business. Murray's actions in allegedly misrepresenting the environmental status of Morris' land is behavior which can easily be seen as furthering Galbreath's interests as a real estate brokerage company. This behavior sharply contrasts with an employee's intentional assaults on customers such as in Lane v. Hocursak. See also, Brown v. HousingAuthority, 23 Conn. App. 624 (1990) (defendant's criminal attack on plaintiff after traffic altercation not related to employment regardless of fact that defendant was driving between job sites);Guitierrez v. Thorne, 13 Conn. App. 493, 499 (1988) (sexual assault "had no connection to the defendant's business of providing supervision and training to mentally retarded persons"); Smith v. Edwards, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 319952 (February 9, 1996, Hauser, J.; 16 Conn. L. Rptr. 202, 204) (schoolteacher's "alleged acts of sexual misconduct with the minor plaintiff are clearly outside the scope of his employment"); Mullen v. Horton, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533347 (October 18, 1995, Hennessey, J.) (sexual intercourse between priest and parishioner is not in furtherance of employer's business); Maule v. Sullivan, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 517623 (August 9, 1993, Wagner, J.) (nurse's alleged sexual assault of patient "clearly outside the scope of his employment and not in furtherance of an interest of the hospital"). Cf.Glucksman v. Walters, 38 Conn. App. 140, 659 A.2d 1217 (1995), cert. denied 235 Conn. 914 (1996) (overturning directed verdict CT Page 502 for YMCA on plaintiff's claims under respondeat superior because jury could have found that defendant's assault of plaintiff on premises was related to employment even though defendant was off-duty at the time).[2]
The defendants also move to strike the prayer for relief on the fourth count. They argue that an employer is ordinarily not liable for punitive damages for acts of its employees in the course of their employment. They cite to West Haven v. HartfordIns. Co., 41 Conn. Sup. 54, 594 A.2d 4958 (1990), aff'd,221 Conn. 149 (1992). As the plaintiffs point out, the court in that case went on to state, "Of course, there are exceptions, such as when the principal expressly authorizes the act as it was performed, which was the basis for the award of punitive damages." West Haven v. Hartford Ins. Co., supra, 551. But seeSilva v. Arroyo, Superior Court, judicial district of New London, Docket No. 537532 June 26, 1996, Austin, J.;17 Conn. L. Rptr. 306).
A motion to strike a prayer for relief should be granted if, assuming the truth of the allegations, the relief sought could not be legally awarded to the plaintiff. Kavarco v. T.J.E., Inc.,
supra. In count four, the plaintiff claims intentional misrepresentation. It has alleged that Murray's actions were taken with the knowledge or acquiescence of Galbreath. If it is true that the intentional misrepresentations were made with Galbreath's knowledge, the court could award punitive damages. Thus, the motion to strike the prayer for relief of count four is denied.
Count seven alleges a violation of CUTPA by Murray. The defendants assert that Murray is not a person engaged in trade or commerce within the meaning of Connecticut General Statute Section 42-110 (a), et seq. and that CUTPA does not apply to a single transaction among commercial entities.
They argue that the plaintiff has failed to allege that Murray, as an individual, is a person engaged in trade or commerce within the meaning of CUTPA. They continue by reciting that this case involves a single transaction among commercial entities which is insufficient as a matter of law to satisfy the pleading requirements for a CUTPA claim. They cite authority holding that isolated private sales of real property do not constitute trade or commerce. The defendants also argue that the policy of protecting consumers is absent, where, as here, the CT Page 503 plaintiff is a commercial entity.
The plaintiff has responded that it has alleged that Murray is engaged in trade or commerce under CUTPA. It contends that it has alleged sufficient facts to establish that the services of Murray fall within CUTPA's definition of trade and commerce, and that a single transaction, including a real estate transaction, is a sufficient basis for a CUTPA claim. It concludes by saying that a consumer relationship need not be alleged.
"A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." S.M.S. Textile Mills, Inc. v. Brown. Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 797 (1993). The Unfair Trade and Practice Act "Section 42-110b (a) provides: No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. In determining whether [or not] certain acts constitute a violation of this act, we have adopted the criteria set out in the cigarette rule . . . (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Internal quotation marks omitted.) WilliamsFord, Inc. v. Hartford Courant Co., supra, 591 (1995).
"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citations omitted; internal quotation marks omitted.)Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, 725-26 (1995).
"Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Citations omitted; internal quotation marks omitted.) Jacobs v. Healey Ford-Subaru, Inc., supra. The question of whether an action or practice can be the basis of a CUTPA action depends upon all the circumstances of the particular case. Taking the facts most favorably to the pleader, the CT Page 504 plaintiff has stated a cause of action under CUTPA.
"In order to withstand a motion to strike for legal insufficiency, [the] plaintiff must allege practices or methods of trade by the defendant that can be described as immoral, unethical, oppressive, unscrupulous or offensive to public policy." Chernet v. Town of Wilton, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No 108840 (September 28, 1990, Cioffi, J.; 2 Conn. L Rptr. 367, 368).
The plaintiff has alleged facts sufficient to support its contention of immoral practices by the defendant. "CUTPA is a remedial statute and is to be construed liberally to effectuate its public policy goals." Lutson v. Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 268229 (August 10, 1990, Jones, J., 2 Conn. L. Rptr. 185, 186). The plaintiff has alleged that Murray intentionally provided materially false and misleading statements to the plaintiff's bank. The plaintiff has indeed alleged immoral, unethical or acts against public policy, and has also satisfied the third prong of the cigarette rule by alleging substantial injury. It claims it has suffered an ascertainable loss of money.
"In order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a trade or business." (Internal quotation marks omitted). Pergament v. Green, 32 Conn. App. 644, 655 (1993). See also Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660, 669
(1992). The allegations satisfy the requirement that the acts were performed in a trade or business.
"Trade or commerce . . . is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. . . . The entire act is remedial in character . . . and must be liberally construed. . . ." (Citations omitted; internal quotation marks omitted). Larsen Chelsey Realty Co. v. Larsen,
supra. In considering the allegations, the court takes into account facts "`necessarily implied and fairly provable under the allegations.'" Abely Waste Oil v. Ravenswood Development Corp.,
Superior Court, judicial district of New Haven, Docket No. 369487 (September 15, 1995, Hartmere, J.; 15 Conn. L. Rptr. 562, 564), quoting Westport Bank Trust Co. v. Corcoran, Mallin Aresco,
CT Page 505221 Conn. 490, 495 (1992).
The plaintiff has specifically alleged that the defendants were engaged in trade or commerce. It has also alleged that Murray, a principal of Galbreath, acted as the broker and agent for Morris with regard to the transaction. Murray was offering for sale his services as a real estate broker. The defendants' argument that the plaintiff must specifically allege that Murray is a "person" under CUTPA is not supported by any authority. In addition, the defendants have given no persuasive reasons to draw a distinction between the allegations made by the plaintiff and allegations that specifically allege Murray is a person under CUTPA. Because the count is against Murray in his individual capacity, there is no reason to draw such a distinction. Furthermore, it is unclear against whom count seven is directed in the defendants' view, if not to Murray as an individual. The plaintiff has stated sufficient facts to allege that Murray was engaged in a trade or commerce.
Although there is a split of authority within the superior court, a single act can be a violation of CUTPA. The defendants rely on Swienicki v. Griggs Browne, in which the court held that allegations of a continuous course of conduct is necessary to state a cause of action under CUTPA. Swienicki v. Griggs Browne, Superior Court, judicial district of New London, Docket No. 513407 February 28, 1995, Hurley, J.). Given the split in authority, this case is not dispositive or persuasive.
"[T]he majority of superior court decisions . . . have held that a litigant does not need to allege more than a single act of misconduct in order to bring an action under CUTPA." (Citation omitted; internal quotation marks omitted.) Hernandez v. King,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 536321 (January 29, 1996, Hennessey, J.,16 Conn. L. Rptr. 65, 67). But see Morgan v. Tolland County HealthCare Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 469204 (February 9, 1996, Handy, J.) ("There are no allegations that the defendant's conduct constituted a pattern of unfair or deceptive business practices. Thus, the actions complained of consist of merely a single act, within which are multiple acts of alleged negligence and/or recklessness, and therefore, the plaintiff has failed to adequately plead its CUTPA count.").
"[U]sually when CUTPA is held to apply to a single CT Page 506 transaction, the defendant is an entity or an individual engaged in a business activity which is at the heart of the complaint and alleged violation." (Internal quotation marks omitted.) Jokl v.Watt, Superior Court, judicial district of New Haven, Docket No. 372000 (February 28, 1996, Gray, J). See also New Horizons RealtyInc. v. Goodby, Superior Court, judicial district of Middlesex, Docket No. 68068 July 25, 1994, Gaffney, J.). Here, the defendant is a real estate broker accused of making materially false and misleading statements to the purchaser's lender. This is the type of situation to which CUTPA applies.
The defendants also cite to Basile v. Wozniak, Superior Court, judicial district of New London, Docket No. 508167 (April 11, 1989, Leuba, J.; 4 CSCR 403), which held that the conveyance of real property in question did not satisfy the trade or commerce requirement under CUTPA. This holding is not applicable here, where the plaintiff has alleged that Murray was engaged in trade or commerce under CUTPA. The court states that "[s]ome Superior Court decisions appear to have held that CUTPA does apply to a single transaction by a person not engaged in the business of making such transactions." Basile v. Wozniak, supra. The court's rejection of these decisions is based on the conclusion of Keeler v. Deuth, Superior Court, judicial district of Waterbury, (September 2, 1988, Healy, J.; 3 CSCR 764), that "CUTPA does not apply to a private, individual, one-time seller of a business when that person is not in the business of selling businesses." (Internal quotation marks omitted.) The court conflates the sufficiency of allegations regarding trade or commerce with whether a single transaction can be the basis for a CUTPA claim. Cf. Jokl v. Watt, supra; New Horizons Realty, Inc.v. Goodby, supra.
Finally, the defendants' contention that the plaintiff's CUTPA claim is insufficient because it is not a consumer is without merit. Our Supreme Court has stated "in no uncertain terms that CUTPA imposes no requirement of a consumer relationship. " Larsen Chelsey Realty Co. v. Larsen, supra. "[A] competitor or other business person can maintain a CUTPA cause of action without showing consumer injury. . . . Federal district courts interpreting Connecticut law also have reached this conclusion." (Citations omitted; internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen, supra.
Count eight alleges a violation of CUTPA by Galbreath. The defendants move to strike on the grounds that the plaintiff has CT Page 507 not properly plead respondeat superior or CUTPA in that CUTPA does not apply to a single real estate transaction among commercial entities. The defendants also move to strike the prayer for relief for count eight on the grounds that attorney's fees under the purchase agreement are not available to the plaintiff because Galbreath was not a party to the agreement.[3]
The defendants argue that the plaintiff failed to allege that Murray was acting to further Galbreath's business. As discussed above, there is no requirement that the plaintiff specifically use the language "in furtherance of the employer's business"; in the alternative, the plaintiff has alleged sufficient facts regarding "in furtherance" to support a claim under the doctrine of respondeat superior. See discussion, supra, regarding counts four and six.
The defendants also argue that the plaintiff's claim is legally insufficient because a single transaction cannot be the basis for a CUTPA claim. As discussed above, a single transaction can be the basis for a CUTPA claim particularly where the claim involves the actions of a businessperson whose acts form the basis of the claim. See discussion, supra, regarding count seven.
The defendants state without elaboration that neither Morris nor the plaintiff "are engaged in the business of selling real estate." Assuming arguendo that this is true, it does not follow that the plaintiff's claim must fail. A CUTPA claim must allege a violation by a person engaged in trade or commerce. It is not necessary that the plaintiff be engaged in trade or commerce. Such a requirement would defeat a significant purpose of CUTPA: to protect consumers. Even had the defendants adequately briefed this issue, the argument is without merit.
Finally, the defendants argue that the plaintiff's claim must fail to the extent the plaintiff seeks to impose CUTPA liability upon Galbreath based upon respondeat superior for any negligence of Murray. Given that count eight is based on intentional
misrepresentation, this argument is irrelevant.
With regard to the prayer for relief, the motion to strike is denied. The defendants argue that the prayer for relief must be stricken because it seeks punitive damages under CUTPA and attorney's fees under the agreement. "[U]nder CUTPA, a plaintiff is entitled to have the trial court consider awarding both CT Page 508 punitive damages . . . and attorney's fees." (Citations omitted; emphasis omitted; internal quotation marks omitted.) SaturnConstruction Co. v. Premier Roofing Co., 238 Conn. 293, 311
(1996). The prayer for relief, however, specifies attorneys' feesunder the Agreement. The agreement contains an indemnification clause between the purchaser (the plaintiff) and the seller (Morris); this clause includes attorney's fees. Because neither Murray or Galbreath are parties to the agreement, however, the plaintiff cannot recover attorneys' fees from Galbreath based on the agreement.
The motion to strike must be denied because the defendants moved to strike the entire prayer for relief. "`If the motion attacks the entire pleading, it will fail if any part of the pleading is legally sufficient.'" Dantzler v. City of New London,
Superior Court, judicial district of New London, Docket No. 529726 (March 3, 1995, Hurley, J.), quoting Grier v. West HavenPolice Department, 40 Conn. Sup. 221, 222 (1984). The same principle applies to a motion to strike a prayer for relief in its entirety.
Moraghan, J.