[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
Factual Background
The three plaintiffs, Elizabeth Bell, Barbara Murphy-Finneran, and Paula Brown, parents of children attending Alma E. Pagets School, bring this action in a nine count complaint against the defendants, West Haven Board of Education and Ellen Fenty Morrison.[1] The plaintiffs allege that during the school years 1994-1996, the defendant school board employed a teaching program called "Responsive Classroom" that emphasized social skills at the expense of discipline and academics. Complaint, First Count, Paragraph 7. The plaintiffs further allege that the defendant Fenty-Morrison controlled the educational policies and practices at Alma E. Pagets School during CT Page 13244 the relevant school years, and that she publicly declared a belief in not rewarding academic excellence. Complaint, First Count, Paragraph 4, 10.
The plaintiffs allege that during the relevant school years, the defendants "encouraged, created, and tolerated an atmosphere of chaos, disruptiveness and violence at the Alma E. Pagets School"; that their children where exposed to said physical and verbal violence on a daily basis; and that school became a place of fear where learning could not and did not take place. Complaint, First Count, Paragraph 11.
The plaintiffs further allege that as a result of the defendants' acts and omissions, their children were deprived of an education comparable to the education received by children of comparable ages at other Connecticut elementary schools. The plaintiffs additionally allege that their children suffered extreme emotional distress.
The plaintiffs' claims sound in tort: counts one through three allege educational malpractice; counts four through six allege negligence; and counts seven through nine allege intentional infliction of emotional distress.
On September 12, 1997, the defendants filed a motion to strike counts one through nine on the ground that they failed to set forth legally sufficient claims.[2]
Pursuant to Practice Book § 155, the defendants have filed a memorandum in support of their motion to strike, and the plaintiffs have filed a memorandum in opposition.
 Legal Discussion Educational Malpractice and Negligence (Counts 1-6)
The defendants argue that although the plaintiffs distinguish their educational malpractice claims (counts one through three) from their negligence claims (counts four through six), the rationale for the malpractice claims — "[that defendants' conduct] falls below the minimum standard of care of educational professionals supervising the education of elementary school children" — is not distinct from the rationale for the negligence claims — "defendants were negligent in that they failed to exercise reasonable care in . . . planning and supervising the education of the plaintiffs' children." Thus, the defendants argue, the gravamen of the plaintiffs' complaint is that the defendants engaged in educational malpractice. The defendants argue that the court should strike counts one through six as they CT Page 13245 constitute a claim for educational malpractice, a claim the Connecticut Supreme Court declined to recognize in Gupta v. NewBritain General Hospital, 239 Conn. 574, 687 A.2d 111 (1996).
The plaintiffs do not address the issue of whether their educational malpractice claims are distinct from their negligence claims. The plaintiffs do argue, however, that the holding inGupta v. New Britain General Hospital, supra, 239 Conn. 574, very specifically did not apply the jurisprudential reservations which most courts view as militating against recognizing a cause of action for educational malpractice. Rather, the plaintiffs reason that (1) these reservations only constitute dicta, and as (2) theGupta court did indicate that there were two exceptional situations in which it would entertain such litigation, it would be inappropriate to strike its educational malpractice claims at this early stage.
In Gupta v. New Britain General Hospital, supra,239 Conn. 593-94, the Supreme Court upheld the lower court's grant of summary judgment for the defendant, New Britain General Hospital, on the issue of whether it failed to provide the plaintiff with appropriate medical training. The court held that the plaintiff failed to plead facts coming within either of the two exceptions to the rule barring claims of inadequate education. It reached its holding by engaging in a three-tiered discussion: (1) characterizing plaintiff's claim of inappropriate medical training as a generalized complaint of inadequate education, essentially the contract variant of the educational malpractice claim;[3] (2) explaining the reasons behind the bar to such generalized claims whether asserted in tort or contract; and finally (3) explaining the two very specific situations wherein a court could entertain a contract claim based upon inadequate educational services.
The court reasoned that jurisprudential considerations cast serious doubt on the viability of the educational malpractice tort. "Where the essence of the complaint is that an educational institution breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction and called upon to review the soundness of the method of teaching that has been adopted by that educational institution . . . This is a project that the judiciary is ill equipped to undertake." (Brackets omitted; citation omitted.)Id., 590. Educational malpractice "claims involve the judiciary in the awkward [task] of defining what constitutes a reasonable educational program and of deciding whether that standard has CT Page 13246 been breached." Id., 591. An educational institution's conduct "in providing particular educational services to students . . . must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts."Gupta v. New Britain General Hospital, supra, 239 Conn. 590, citing Cencor, Inc. v. Tolman, 868 P.2d 396, 399 (Colo. 1994) (en banc) ("Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of educational malpractice are not cognizable." Gupta v. New Britain General Hospital,supra, 239 Conn. 590; see, e.g., Ross v. Creighton University,957 F.2d 410, 416 (7th Cir. 1992); Paladino v. Adelphi University,89 App. Div.2d 85, 454 N.Y.S.2d 868, 870-872 (N.Y.App.Div. 1982);Hunter v. Board of Ed. of Montgomery County, 292 Md. 481,439 A.2d 582, 585 (1982); D.S.W. v. Fairbanks No. Star Bor. Sch. Dist.,628 P.2d 554, 556 (Alaska, 1981); Loughran v. Flanders, 470 F. Sup. 110,115 (D.Conn. 1979); Peter v. San Francisco Unified School District,60 Cal.App.3d 814, 825, 131 Cal.Rptr. 854, 861 (Cal.Ct.App. 1976) (finding no "conceivable workability of a rule of care against which [teachers'] alleged conduct may be measured").
The court reasoned that the same jurisprudential considerations that cast doubt on the viability of the educational malpractice tort also "inform[ed] [its] analysis of a contract claim based on inadequate educational services." (Emphasis in original.) Gupta v. New BritainGeneral Hospital, supra, 239 Conn. 591, citing Paladino v. AdelphiUniversity, supra, 454 N.Y.S.2d 871-72 ("the soundness of [the] policy of noninterference is equally applicable when the action is . . . formulated in contract").
In declining to adjudicate the plaintiff's claim of inadequate medical training, the Gupta court was declining to reason beyond the province of its expertise. "Specialized bodies, such as the accreditation council for graduate medical education (accreditation council), currently have the responsibility of overseeing and regulating residency programs . . . [T]hese external regulators are better suited than courts to evaluate the effectiveness of a [medical] residency program." Id., 592.
The court did, however, envision two situations wherein adjudication of a cause of action for institutional breach of a contract for educational services would not be beyond a court's expertise. "The first [situation] would be exemplified by a showing that the educational program failed in some fundamental respect." Gupta v. NewBritain General Hospital, supra, 239 Conn. 592. In explaining the CT Page 13247 fundamental failure exception, the Gupta court applied the analysis used by its sister courts. See Ross v. Creighton, supra, 957 F.2d 417 (remanding to the district court as plaintiff has pleaded within the breach of contract exception to the bar against adjudication of educational malpractice claims. Plaintiff alleges that "the university made a specific promise that he would be able to participate in a meaningful way in [its] program because it would provide certain specific services . . . and it reneg[ed] on its commitment to provide those services and, consequently, effectively [cut] him off from any participation in and benefit from the University's academic program.") (Emphasis in original); Wickstrom v. North Idaho College, 111 Idaho 450,725 P.2d 155, 157-58, n. 1 (1986) (A complaint alleging "a failure to provide objective fundamentals . . . would not implicate the policy concerns . . . [arising from the evaluation of the . . . subjective nuances of the teacher-student relationship . . . i.e., methodology of teaching and other matters usually raised under the rubric, `educational malpractice,' which cause of action Idaho does not recognize").
The second situation wherein courts could entertain a cause of action for institutional breach of a contract for educational services "would arise if the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gupta v. New BritainGeneral Hospital, supra, 239 Conn. 593. In explaining the breach of contract exception, the Gupta court applied the analysis of its sister courts. See Cencor, Inc. v. Tolman, supra,868 P.2d 400 (Where the respondents allege that "provisions of the enrollment agreements and the [school's] catalog [constitute] express terms and conditions of a contract and [where the school] breached the contract by failing to prove specific educational services . . . [respondents] have allege[d] a breach . . . distinct from the general allegations of unreasonable conduct that characterize . . . [educational malpractice claims]");Paladino v. Adelphi University, supra, 454 N.Y.S.2d 873 ("[I]f the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action . . . might be viable . . . [But where] the asserted breach is predicated upon the quality and adequacy of the course of instruction . . . [it is not a concern] for the courts but rather [is one] for the State Education Department and its commissioner").
As a threshold matter, the defendants are correct in their assertion that the plaintiffs' negligence rationale — that the defendants "failed CT Page 13248 to exercise reasonable care in planning and supervising the education of the plaintiff's minor children" merely rephrases its educational malpractice rationale — "defendants . . . acts and omissions fell below the minimum standard of care of educational professionals supervising the education of elementary-age school children."[4]
Therefore, the plaintiffs' claims, asserted in counts one through six, all fall under the rubric of educational malpractice and are treated as such.
The defendants are likewise correct in their reading of Guptav. New Britain General Hospital, supra, 239 Conn. 574, as the court joined its sister courts in declining to recognize a cause of action for educational malpractice: where a court is "asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution . . . [the] . . . project [is one] that the judiciary is ill equipped to undertake." (Citation omitted.) Id., 590.
The plaintiffs are incorrect in their assertion that theGupta court's discussion of educational malpractice was dicta to its holding regarding exceptions to the rule barring claims of inadequate education. The court's discussion of the barred claim was integral to its discussion of exceptions to that bar; any explanation of the exceptions to a rule, necessarily entails explanation of the rule itself.[5]
Indeed plaintiffs, like the plaintiffs in Gupta, have failed to plead facts coming within the exceptions to the bar. "The plaintiffs have neither alleged nor presented factual evidence of a fundamental failure" on the part of the defendants; Gupta v. NewBritain General Hospital, supra, 239 Conn. 593; nor have they alleged breach of a specific contractual promise. Id. The plaintiffs generally allege adequacy.[6] In so doing, "the plaintiff[s] ha[ve] done no more than simply allege that the education was not good enough . . . This, in turn, is insufficient to state a cause of action." (Citations omitted.)Gupta v. New Britain General Hospital, supra, 239 Conn. 593.
The court will strike plaintiffs' asserted claims for educational malpractice, counts one through six, for legal insufficiency as (1) the Connecticut Supreme Court recognizes neither the educational malpractice tort nor its contract variant; and as (2) the plaintiffs have failed to set forth claims coming within the exceptional situations wherein a court CT Page 13249 could entertain a contract claim based upon inadequate educational services.
Intentional Infliction of Emotional Distress (Counts 7-9)
The defendants argue that the plaintiffs do not allege conduct which is sufficiently outrageous to survive the defendants' motion to strike. They argue that the plaintiffs merely conclude that "the actions of the defendants . . . were extreme and outrageous"; Complaint, Count 7, Paragraph 12; and that a mere conclusion is insufficient as a matter of law to set out a legally sufficient cause of action for intentional infliction of emotional distress.
The plaintiffs argue that in setting out their claims for intentional infliction of emotional distress, they do more than merely conclude that the defendants' conduct was extreme and outrageous. The plaintiffs argue that the facts[7] supporting their claim for intentional infliction of emotional distress are detailed in counts one through three and incorporated by reference into counts seven through nine. The plaintiffs additionally argue that whether conduct is sufficiently extreme and outrageous to constitute the tort is generally regarded as a question of fact and that the court should not, therefore, usurp this jury function. They conclude that their claim, set out in counts seven through nine, should survive the defendants' motion to strike.
"In order for [a] plaintiff to prevail in a case for liability under the intentional infliction of emotional distress [tort], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Petyan v.Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind . . . Thus, it is the intent to cause injury that is the gravamen of the tort . . . (Internal quotation marks omitted.) DeLaurentis v. New Haven,220 Conn. 225, 266-67, 597 A.2d 807 (1991). "A line can be drawn CT Page 13250 between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility. (Citations omitted; internal quotation marks omitted.) Whelan v. Whelan,41 Conn. Sup. 519, 522-23, 588 A.2d 251 (1991). Thus, "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. The "extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge where it would not be so if he did not know." Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 20, 597 A.2d 846 (1991), citing 1 Restatement (Second), Torts. § 46, Comment (f).[8]
As a threshold matter, the defendants are incorrect in their assertion that plaintiffs' intentional infliction of emotional distress claim consists entirely in its conclusory allegation that the "responsive classroom teaching method was extreme and outrageous." Defendants' Brief dated September 12, 1997, p. 12. The plaintiffs' intentional infliction of emotional distress claims incorporate by reference the facts asserted in counts one through three, wherein the plaintiffs assert that the defendants "encouraged, created, and tolerated an atmosphere of chaos, disruptiveness and violence . . ."; that their children were exposed to said physical and verbal violence; and that school became a place of fear where learning could not and did not take place. Complaint, First Count, ¶ 11.
"Whether the conduct complained of is sufficiently extreme or outrageous is for the determination of the court in the first instance." Randall v. Halloran Sage, supra, Superior Court, Docket No. 533629. The facts asserted here, however, even "construe[d] in a light most favorable to [the plaintiffs]"; RKConstructors, Inc. v. Fusco Corp, 231 Conn. 381, 384 (1994); do not describe conduct that exceeds all bounds usually tolerated by decent society and are therefore not outrageous. Although the plaintiffs assert that the defendants affirmatively "encouraged, created, and tolerated an atmosphere of chaos, disruptiveness and violence" and that as a proximate result, the plaintiffs' children suffered "extreme emotional distress"; Complaint, Seventh count, Paragraphs 11, 13; said behavior does not display CT Page 13251 the deliberate will to harm that is characteristic of outrageous behavior. See Subbe-Hirt v. Bacciagaluppi, supra, 94 F.3d 114-15 (predatory behavior found to be outrageous); Johnson v. TeamstersLocal 559, supra, 102 F.3d 25 (prior knowledge of employee's particular weakness was part of the outrageous character of surveillance by supervisor).
The court will strike the plaintiffs' claims for intentional infliction of emotional distress (counts seven through nine) as they fail to allege facts sufficiently extreme or outrageous so as to meet the requirement of this cause of action.
CONCLUSION
Based on the foregoing, the defendants' Motion to Strike (#111) the nine counts of the complaint is granted.
HARTMERE, J.