[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE COUNT 12 OF AMENDED COMPLAINT
Determination of this Motion to Strike requires a foray through the somewhat uncharted territory of permissible "entrepreneurial" CUTPA claims against counsel by a former client. The result of the alleged conduct is said to be the dissipation of millions of dollars of an estate via risk-laden CT Page 4293 realty ventures in part motivated by counsel's alleged self-interest.
Plaintiff Bet Mayer has filed a twelve-count amended complaint against defendants, Attorney Kenneth Gammill, Cummings Lockwood, Cummings Lockwood, P.C., Whitman Ransom and Whitman, Breed, Abbott Morgan, who allegedly provided plaintiff with legal services. Specifically, defendants are said to have been initially engaged by plaintiff's deceased husband for estate planning advice and the preparation of wills for both plaintiff and plaintiff's decedent. Plaintiff claims that her sizeable estate has been depleted through mismanagement by defendants due to risky investments in Florida real estate. Defendant Gammill moved to strike counts three, four and twelve.[1] The court earlier denied Gamimill's motion to strike counts three and four, and now considers whether count twelve, which alleges that Gammill violated the Connecticut Unfair Trade Practices Act (CUTPA), is legally sufficient.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . [The court] must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael. Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
The Supreme Court has stated that, in general, "CUTPA applies to the conduct of attorneys. . . . The statute's regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law. . . . Nevertheless, we have declined to hold that every provision of CUTPA permits regulation of every aspect of the practice of law. . . . We have stated, instead, that, only the entrepreneurial aspects of the practice of law are covered by CUTPA." (Citations omitted; internal quotation marks omitted.) Beverly Hills Concepts. Inc., v. Schatz Schatz, 247 Conn. 48, 79, 717 A.2d 724 (1998). The distinction between purely representational acts without an arguably illicit gloss of financial self-gain on the one hand, and entrepreneurial acts on the other, for purposes of pleading CUTPA against an attorney, is critical because our appellate courts have frowned upon turning a pure malpractice claim into a CUTPA claim. "CUTPA CT Page 4294 covers only the entrepreneurial or commercial aspects of the profession of law. The noncommercial aspects of lawyering — that is, the representation of the client in a legal capacity — should be excluded for public policy reasons." Haynes v. Yale-New HavenHospital, 243 Conn. 17, 35, 699 A.2d 964 (1997).[2]
"Accordingly, within this framework, [the court] must review the plaintiff's allegations of CUTPA violations and look to the underlying nature of the claim to determine whether it is really a . . . malpractice claim recast as a CUTPA claim." Id., 38.
Plaintiff incorporates counts one through seven into the CUTPA count. Relevant to Gammill is count one, alleging breach of fiduciary duty; count two, alleging professional negligence; count three, alleging breach of an oral contract; and count four, alleging breach of an implied contract. Pleaded in each of the first four counts are specific allegations that Gammill failed to (a) properly investigate the advisability of investing substantially all the estate assets in speculative real estate ventures in Florida; (b) properly assess the risks of investing substantially all the estate assets in speculative real estate ventures in Florida; (c) properly inform plaintiff of these risks; (d) diligently and competently represent plaintiff's interests as an individual, co-executor of the decedent's estate, spouse of the decedent and beneficiary of the defendant's estate; (h) represent plaintiff's interests as a co-executor of the decedent's estate with undivided loyalty; (i) inform and disclose to plaintiff that he had a conflict of interest in representing her in her capacity as a co-executor and beneficiary while also representing the decedent's son, Herbert Mayer, Jr., as a co-executor, trustee of the trust created for plaintiff's benefit and remainderman under the will; (j) inform plaintiff of the perils of his representation of both her and Mayer, Jr.; (k) explain to plaintiff the limitations imposed on his representation of her; (1) advise plaintiff to seek the advice of independent counsel. Plaintiff also alleges that despite Gammill's advice to the co-executors that they had a fiduciary duty to maintain and preserve the value of the estate assets to fulfill the estate plan of the decedent, Gammill encouraged an unusual high risk investment that resulted in a failure of the decedent's estate plan. Plaintiff further alleges that Gammill declined to act as co-trustee, even though he was appointed in the decedent's will, and that as a result, the only remaining trustee was Mayer, Jr., a remainderman whose interests were adverse to those of the plaintiff. The court understands from oral argument that a resulting alleged impropriety (as to CT Page 4295 declining the trusteeship the decedent-client had desired), Gammell thus became "free" to do the business representation in the real estate investments not so available to him were he still a trustee.
More importantly for CUTPA purposes, plaintiff also alleges that Gammill failed to inform her of the alleged conflict of interest and the limitations it would superimpose on Gammill's ability to faithfully represent both her and Mayer, Jr. Most importantly, Gammill is alleged to have failed to advise the plaintiff to seek the advice of independent counsel "because he was concerned that, if he had so informed, explained to, and advised Bet Mayer, she would not have consented to the continued joint representation and the defendants would not have received substantial legal fees as a result of the joint representation." (Amended Complaint, Count 12, ¶ 46).
The estate at issue here was worth millions of dollars, and plaintiff has alleged that defendants have taken substantial legal fees for services they purportedly rendered to plaintiff, Mayer, Jr. and the estate. (Amended Complaint, Count One, ¶ 42). Construing the allegations in the amended complaint in the manner most favorable to plaintiff, including the facts necessarily implied and fairly provable under the allegations; Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, 495,605 A.2d 862 (1992); the court finds that plaintiff has pleaded sufficient facts to defeat Gammill's motion to strike count twelve of the amended complaint. It is a sound analytical first step, in CUTPA contexts, to set aside the claims of pure professional malpractice based on negligence or incompetence, and scrutinize what remains. Our appellate courts have thus far wisely left largely unstated examples of commercial or entrepreneurial conduct for which CUTPA claims would lie. Until the appellate courts hold to the contrary, in the virtually certain enlightenment to develop, this court concludes that a legitimate CUTPA-based claim against an attorney ought to be deemed to exist where the claim is based not primarily or solely on incompetence but on the additional claims of avarice-driven motivation of an otherwise competent attorney.
One should recall that the Haynes court adopted language to the effect that the practice of law may give rise to consumer protection claims "only when the actions at issue are chiefly
concerned with `entrepreneurial' aspects of practice, such as the solicitation of business and billing practices, as opposed to CT Page 4296 claims directed at the `competence and strategy' employed. . . ." (Emphasis added.) Haynes v. Yale-New Haven Hospital, supra,243 Conn. 35-36, quoting Eriks v. Denver, 118 Wash.2d 451, 465,824 P.2d 1207 (1992). Plaintiff here in effect alleges that Gammill was motivated to continue to represent plaintiff — regardless of whether that representation was in plaintiff's best interests — in order to continue with and collect upon the more remunerative work involved in the conflict-ridden purchases of realty. The court finds that the facts alleged in count twelve fit the Haynes requirement that the complained of actions chiefly concern commercial or entrepreneurial purpose motivations and aspects of law practice.[3]
Accordingly, the court denies the motion to strike count twelve sounding in CUTPA.
NADEAU, J.