[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE (#107)
The plaintiff, Stephen Day, filed his initial complaint against the defendants on June 5, 1997. The defendants are the Yale University School of Drama (school), S. Wojewondski, dean of the school, and Earl Gister, associate dean of the school. The plaintiffs second revised complaint (complaint), which is the operative pleading, was filed on January 28, 1998 and contains seven counts. The causes of action stated in the complaint arise out of the plaintiffs relationship with the defendants as a student at the school and the termination of this relationship. The defendants filed a motion to strike and memorandum in support thereof (Defendants' Memorandum) on March 12, 1998. The plaintiff CT Page 3306 filed a memorandum in opposition to the motion to strike on June 22, 1998, and the defendants filed a reply thereto on December 10, 1999. The parties presented their oral arguments on the motion to strike to the court on December 13, 1999.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998); Practice Book § 10-39. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Waters v.Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "First, the court must accept as true the facts alleged in the complaint."Pamela B. v. Ment, 244 Conn. 296, 325, 709 A.2d 1089 (1998). However, a motion to strike "does not admit legal conclusions orthe truth or accuracy of opinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.)Faulkner v. United Technologies Corp. , 240 Conn. 576, 588,693 A.2d 293 (1997). In deciding a motion to strike, "[t]he role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. Middlesex Mutual Assurance Co.,242 Conn. 375, 378, 698 A.2d 859 (1997). "Thus [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." Pamela B. v. Ment, supra,244 Conn. 308. In addition, a party may use a motion to strike to attack the legal sufficiency of a prayer for relief Practice Book § 10-39. A court may strike a claim for relief "only if the relief sought could not be legally awarded." Pamela B. v. Ment, supra, 244 Conn. 325.
In the complaint, the plaintiff alleges that he was admitted to the school and began a three year course of study in the fall of 1993. The plaintiff contends that during the term of his studies, neither the school nor the individual defendants provided him with any written warnings or notice that his performance was deficient. To the contrary, the plaintiff contends that Gister, the faculty member assigned to monitor his academic performance, praised two of the performances he gave in the spring of 1995. He also claims that he obtained passing grades in all the courses for which he registered. On May 18, 1995, near the end of his CT Page 3307 second year of study, the plaintiff alleges that Gister informed him that he could choose to withdraw from the school voluntarily, or the school would dismiss him. Gister allegedly told the plaintiff that the school was taking this action due to the plaintiffs "lack of sufficient growth and development in crucial areas of study." (Complaint, ¶ 7.) The school dismissed the plaintiff on July 12, 1997.
The plaintiff asserts causes of action against all three defendants for breach of contract (count one) and breach of the duty of fair dealing (count two), against the school for violations of the Connecticut Unfair Trade Practices Act (count three) and against Gister for negligence, negligent misrepresentation, intentional infliction of emotional distress and breach of contract (counts four through seven respectively). In their motion to strike, the defendants initially move to strike the entire complaint. In the alternative, the defendants argue that counts one and two of the complaint should be stricken as to the individual defendants and counts three, four, six and seven should be stricken in their entirety. In addition, the defendants argue that the court should strike the plaintiffs claim for attorney's fees in counts one, two, four, five, six and seven and the plaintiffs claim for punitive damages in counts three and six.
Entire Complaint
The defendants argued that the entire complaint should be stricken on the grounds that the complaint is premised on the school's assessment of the plaintiffs academic ability, and that such assessments are not subject to judicial review pursuant to the decision of the Connecticut Supreme Court in Gupta v. NewBritain General Hospital, 239 Conn. 574, 687 A.2d 111 (1996). The defendants acknowledged that in Gupta the court recognized an exception for conduct that is arbitrary, capricious or in bad faith. They argued, however, that the plaintiff failed to offer a factual basis to support his claim that their conduct fell within this exception. In opposition, the plaintiff argued that the procedural posture of the present case is distinguishable from that in Gupta because in that case, the court was ruling on the defendant's motion for summary judgment, not on a motion to strike. Second, the plaintiff contended that, as pled in the complaint, the present case comes within the exception recognized by the Court in Gupta. CT Page 3308
At oral argument, this court denied the defendants' motion to strike the entire complaint. The court acknowledged that the decision in Gupta v. New Britain General Hospital, supra,239 Conn. 574, is controlling. However, the court also determined that, at least for the purpose of surviving a motion to strike, the allegations in the complaint brought it within the exception for conduct which is arbitrary, capricious or in bad faith. See, id., 596 n. 18.
Counts One and Two
The defendants contend that the plaintiffs cause of action for breach of contract and breach of the duty of fair dealing, as stated in counts one and two respectively, should be stricken as to Wojewondski and Gister because they were not parties to the contract upon which these causes of action are based. In his memorandum and at oral argument, the plaintiff conceded that the motion to strike Wojewondski and Gister from counts one and two should be granted. The motion to strike the individual defendants from counts one and two is granted.
Count Three
The defendants argue that the plaintiffs cause of action against the school for violation of the Connecticut Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; as alleged in count three, should be stricken because CUTPA does not apply to the relationship between the school and the plaintiff. In the alternative, the defendants contend that if CUTPA does apply to this relationship, count three should be stricken because the plaintiff fails to allege facts sufficient to state a CUTPA claim. In opposition, the plaintiff points out that the defendants do not cite to case law stating that CUTPA cannot apply to a school/student relationship and maintains that he has alleged facts that are sufficient to state a cause of action under CUTPA.
1. School/Student Relationship
The defendants advance two arguments in support of their contention that the relationship between the school and the plaintiff cannot support a CUTPA claim: They contend that CUTPA does not apply because the relationship between the school and the plaintiff was not a commercial vendor/consumer relationship; and they contend that CUTPA applies only to "acts or practices in CT Page 3309 the conduct of trade or commerce," and that the school does not engage in such conduct.
A. Commercial Vendor/Consumer
The defendants do not cite to case law in support of their first argument. Even if the court assumes that the parties did not have a consumer relationship, the Connecticut Supreme Court has "stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship. " Larsen Chelsey RealtyCo. v. Larsen, 232 Conn. 480, 496, 656 A.2d 1009 (1995). "In making this determination we find it is relevant to consider the words of the statute, the legislative history and the legislative policy it was designed to implement. . . . First, there is no indication in the language of CUTPA to support the view that violations under the act can arise only from consumer relationships. Indeed various provisions of CUTPA reveal that the opposite is true." Id., 497. "Second, the legislative history of CUTPA reveals that, although consumers were expected to be a major beneficiary of its passage, the act was designed to provide protection to a much broader class." Id. "Finally, the legislature clearly announced its policy for interpreting CUTPA by directing us to the federal legislation upon which CUTPA is modeled . . . The federal courts have repeatedly and historically applied that act's provisions to situations not involving consumers." Id., 498. The motion to strike the plaintiffs CUTPA claim on this basis is denied.
B. Trade or Commerce
The defendants also argue that count three should be stricken because the school does not engage in trade or commerce, as those terms are defined by CUTPA. Pursuant to § 42-110b (a), "[i]n order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a "trade' or "business."' Quimby v. Kimberly Clark Corp. ,28 Conn. App. 660, 669, 613 A.2d 838 (1992). "CUTPA, by its own terms, applies to a broad spectrum of commercial activity. The operative provision of the act, § 42-110b (a), states merely that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' Trade or commerce, in turn, is broadly defined [in § 42-110a (4)] as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or CT Page 3310 intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.'. . . The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted; internal quotation marks omitted.) LarsenChelsey Realty Co. v. Larsen, supra, 232 Conn. 492.
In support of their argument that the school is not engaged in trade or commerce, the defendants compare the relationship between the school and the plaintiff to the relationship between an employer and its employee. They argue that in Quimby v.Kimberly Clark Corp. , supra, 28 Conn. App. 669, the Appellate Court held that such a relationship "does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." (Defendant's Memorandum, p. 12.) However, as explained by the Supreme Court in Larsen Chelsey Realty Co. v.Larsen, supra, 232 Conn. 493, it is the nature of the conduct at issue, and not the fact that it occurred in the context of an employer/employee relationship, that determines whether CUTPA is applicable. Id., 492-93; Fink v. Golenbock, 238 Conn. 183, 214,680 A.2d 1243 (1996). Thus, in Quimby v. Kimberly Clark Corp. , supra, 28 Conn. App. 669, the court rejected the employee's CUTPA claim because "[t]he plaintiff does not allege that the defendant committed these acts "in the conduct or any trade or commerce'. . . . There is no allegation in the complaint that the defendant advertised, sold, leased or distributed any services to the plaintiff" Id., 670; see Larsen Chelsey Realty Co. v. Larsen, supra, 232 Conn. 493.[1]
In the present case, plaintiff alleges that the school "offer[s] educational opportunities to students in exchange for a fee . . .; "the school charged him tuition for the terms during which he attended, he paid these charges and the school "accepted these funds in exchange for permitting the plaintiff to continue with his studies." (Complaint, ¶¶ 62, 16-18.) He alleges that the school's conduct, in wilfully failing to provide him with notice that his performance was sufficiently deficient to warrant dismissal, deprived him of the "ability to determine whether continuing his studies was economically prudent" and caused him to continue his studies, thereby incurring debt and expense. (Complaint, ¶¶ 19-23.) Thus the plaintiff has alleged that the school provided educational "services" to him and that the conduct that gives rise to this count occurred in the conduct of "trade" or "commerce." CT Page 3311
The defendants attempt to support their argument on this issue by referring to cases in which the Connecticut Supreme Court imposed a professional malpractice limitation on the application of CUTPA to claims based on the provision of medical and legal services. However, in imposing this limitation the Supreme Court expressly ruled that "the provision of medical services falls within CUTPA's definition of trade or commerce as "the distribution of any services. . . ." General Statutes §42-110a (4);" (internal quotation marks omitted) Haynes v. Yale-NewHaven Hospital, 243 Conn. 17, 32, 699 A.2d 964 (1997); and held that "`CUTPA applies to the conduct of attorneys.'" Beverly HillsConcepts, Inc. v. Schatz Schatz, Ribicoff Kotkin,247 Conn. 48, 79, 717 A.2d 724 (1998), quoting Heslin v. Connecticut LawClinic of Trantolo Trantolo, 190 Conn. 510, 521, 461 A.2d 938
(1983).
1. Professional Malpractice Limitation
The defendants appear to contend that the professional malpractice limitation referred to above should extend to claims of educational malpractice. In the context of the medical and legal professions, the Supreme Court has ruled that CUTPA's application to these professions is limited and has specified that "only the entrepreneurial or commercial aspects of the [medical] profession are covered [by CUTPA], just as only the entrepreneurial aspects of the practice of the practice of law are covered by CUTPA." Haynes v. Yale-New Haven Hospital, supra,243 Conn. 34; see Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, supra, 247 Conn. 79. Accordingly, the court specifically held that "professional negligence — that is, malpractice — does not fall under CUTPA." Haynesv. Yale-New Haven Hospital, supra, 243 Conn. 34. In commenting on the public policy reasons for imposing limits on claims against the legal profession, the court explained that "it is important not to interfere with the attorney's primary duty of robust representation of the interests of his or her clients." (Internal quotation marks omitted.) Id., 35.
"The Supreme Court has not yet limited the application of CUTPA to other professionals. . . ." Darien Asphalt Paving, Inc. v.Newtown, Superior Court, judicial district of New Britain, Docket No. 4878 (December 7, 1998, Nadeau, J.) (23 Conn. L. Rptr. 495, 498). However, the Superior Court has stated that "the same policy considerations discussed in Gupta that militate against tort liability for educational malpractice generally militate CT Page 3312 against a CUTPA claim grounded in educational malpractice."Wightwood School v. Fritz, Superior Court, judicial district of New Haven at New Haven, Docket No. 410060 (April 9, 1999, Levin,J.) (24 Conn. L. Rptr. 349, 351). This court is persuaded that the professional malpractice limitation should be extended to educational institutions.
Having so concluded the court must then "review the plaintiffs allegation of CUTPA violations and look to the underlying nature of the claim to determine whether it is really a . . . malpractice claim recast as a CUTPA claim." Haynes v. Yale-NewHaven Hospital, supra, 243 Conn. 38. As explained by the court, "the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation." Id. The Supreme Court has not set out a specific standard for distinguishing between professional malpractice claims and claims based on entrepreneurial or commercial dealings.[2] However, in discussing the issue, the court cited to a case in which the court from another jurisdiction, discussing an analogous state consumer protection law, explained that ""the practice of law and medicine may give rise to [consumer protection act] claims. . . only when the actions at issue are chiefly concerned with "entrepreneurial" aspects of practice, such as the solicitation of business and billing practices, as opposed to claims directed at the "competence and strategy" employed by the . . . [defendant].'" Id., 35-36, quoting Ikuno v. Yip, 912 F.2d 306,312 (9th Cir. 1990). In addition, in Gupta v. New BritainGeneral Hospital, supra, 239 Conn. 591 n. 15, the court defined educational malpractice cases as cases in which "a plaintiff sues . . . [an] academic institution for tortiously failing to provide adequate educational services . . . or for tortiously
failing to diagnose educational impediments." (Citations omitted; emphasis in original.)
The Appellate and Superior Courts have granted pretrial motions to dispose of CUTPA claims that were premised solely on allegations of professional incompetence; Rumbin v. Baez,52 Conn. App. 487, 490-91, 727 A.2d 744 (1999); ShareAmerica, Inc.v. Ernst Young, supra, Superior Court, Docket No. 150132; Pascarelli v. Frontier of Connecticut, Inc., Superior Court, CT Page 3313 judicial district of New Haven at New Haven, Docket No. 416426 (March 2, 1999, Silbert, J.). On the other hand, judges of the Superior Court have denied motions to strike CUTPA claims that focus on allegations that the defendant's conduct was motivated by unscrupulous financial considerations; Mayer v. Gammell, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 342234 (April 28, 1,999, Nadeau, J.) (24 Conn. L. Rptr. 363, 364); Advest Group, Inc. v. Arthur Andersen, LLP, supra, Superior Court, Docket No. 571417 (22 Conn. L. Rptr. 525);Nacca v. Simione, Simione, Scillia Larrow, LLC, Superior Court, judicial district of New Haven at New Haven, Docket No. 387221 (August 10, 1999, Devlin, J.); or that focus on allegations regarding the defendant's business processes; Roemmele v. LawOffices of John Haymond, Superior Court, judicial district of New London at New London, Docket No. 547182 (May 4, 1999, Hurley, J.) (24 Conn. L. Rptr. 441, 442); Farino v. Chiarelli, Superior Court, judicial district of New Haven at Meriden, Docket No. 262708 (March 16, 1999, Beach, J.).
Here, in count three of the complaint, the plaintiff incorporates by reference the allegations contained in counts one and two. In those counts, the plaintiff alleges that the school failed to provide him with evaluations or written warnings regarding his performance and did not provide him with written warning regarding his probationary status and its intent to dismiss him. These allegations focus on the school's professional competence and could be characterized as claims of professional negligence or malpractice. However, the plaintiff also alleges that the school charged him tuition for the terms during which he attended, that he paid these charges and that the school "accepted these funds in exchange for permitting the plaintiff to continue with his studies." (Complaint, ¶¶ 16-18.) He alleges that the school's conduct, in wilfully failing to provide him with notice that his performance was sufficiently deficient to warrant dismissal, deprived him of the "ability to determine whether continuing his studies was economically prudent" and caused him to continue his studies, thereby incurring debt and expense. (Complaint, ¶¶ 19-23.) These allegations relate to the entrepreneurial or commercial aspects of the provision of educational services. Thus, in count three of the complaint, the plaintiff commingles claims of professional malpractice, which may not be actionable under CUTPA, with claims of unscrupulous business practices, which are actionable under CUTPA. "Practice Book § 152 [now (1998 rev.) § 10-39] authorizes the striking of a whole complaint or a count thereof . . . [but] does CT Page 3314 not authorize striking portions of a count." Armetta v. Tavano, Superior Court, judicial district of Middlesex at Middletown, Docket No. 84021 (February 18, 1998, Hodgson, J.) (21 Conn. L. Rptr. 306, 307). In considering the plaintiffs allegations regarding the relationship between the plaintiff and the school and the conduct he complains about, this court cannot conclude that there is no set of facts provable under the third count that would constitute a violation of CUTPA.
2. CUTPA Criteria
In the alternative, the defendants argue that the court should strike count three because the allegations stated therein are not sufficient to support a CUTPA claim. The plaintiff counters that the conduct of the school, as alleged in the complaint, constitutes an unfair trade practice.
"It is well settled that in determining whether a practice violates CUTPA [Connecticut courts] have adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Hartford Electric Supply Co.v. Allen-Bradley Co., Inc., 250 Conn. 334, 367-68, 736 A.2d 824
(1999). "Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. . . . Whether a practice is unfair and thus violates CUTPA is an issue "of fact." (Citations omitted; internal quotation marks omitted.) Willow Springs CondominiumAssn., Inc. v. Seventh BRT Development Corp. , 245 Conn. 1, 43,717 A.2d 77 (1998).
In count three, the plaintiff incorporates by reference the allegations stated in his causes of action for breach of contract and breach of duty of good faith as alleged in counts one and two respectively. The plaintiff alleges that the school's failure to CT Page 3315 provide him with evaluations, written warnings of deficiencies and written notices regarding his status constitute breach of contract. In addition, he alleges that the school owed a duty of fair dealing to the plaintiff and that the school breached this duty by failing to provide him with any notice, warning or indication that his performance was deficient.
"A majority of the Superior Court cases support the claim that a simple breach of contract, even if intentional, does not amount to a violation of CUTPA; a claimant must show substantial aggravating circumstances to recover under the Act." (Internal quotation marks omitted.) Bouchard v. Boyer, Superior Court, judicial district of New London at New London, Docket No. 543089 (May 17, 1999, Hurley, J.). However, "the same set of facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation. . . . Lester v. Resort CamplandsInternational, Inc., 27 Conn. App. 59, 71, 605 A.2d 550 (1992). In addition, "a failure to disclose can constitute a CUTPA violation . . . if, in light of all the circumstances, there is a duty to disclose." (Internal quotation marks omitted.) WillowSprings Condominium Assn., Inc. v. Seventh BRT Development Corp. , supra, 245 Conn. 43-44.
Here, in addition to the allegations stated above, the plaintiff also alleges that he paid the tuition charged by the school for two years, he obtained passing grades in the courses he took and his advisors praised his performances. According to the plaintiff, during this time period, the school did not inform him that he did not meet its standards. Near the end of the his second year of study, the school, without prior warning, informed the plaintiff that he could either voluntarily resign or the school would dismiss him. The school ultimately dismissed the plaintiff for what it termed "lack of sufficient growth and development in crucial areas of study." The plaintiff alleges that he incurred significant debt and expense in paying the tuition and that the school's wilful failure to provide him with an indication that it considered him to be deficient deprived him of the ability to determine whether it was economically prudent for him to continue his studies.
Viewing these allegations in the light most favorable to the plaintiff, the plaintiff has pleaded more than a simple breach of contract. Furthermore, his allegation that the school failed to disclose his deficiencies is accompanied by an allegation that the school had a duty to disclose this information to him. The CT Page 3316 school's conduct could be characterized as unfair under the cigarette rule and the plaintiff has therefore alleged a legally sufficient CUTPA claim. The motion to strike count three is denied.
Count Four
In count four, the plaintiff asserts that Gister, as the faculty member assigned to monitor his performance and to appraise him as to whether he was meeting the school's standards, had a common law duty to inform him of his standing at the school. He claims that Gister neglected to perform this duty in the spring semester of 1994 by failing to tell him why he was being placed on probation and the duration thereof, by some unspecified acts or omissions throughout the 1994/1995 academic year and by failing to articulate an intelligible standard which would allow the plaintiff to determine whether he was meeting the school's standards.
The defendants argue that this count should be stricken because it fails to state a recognizable cause of action. They claim that the Connecticut courts have not recognized a cause of action by a student against a teacher for negligent evaluation of the student's performance and refer to a case in which the Superior Court refused to recognize a cause of action for negligent performance appraisal in the employment setting. The plaintiff counters that no Connecticut court has ruled that this cause of action does not exist and thus that "the issue is one of first impression." (Plaintiffs Memorandum, p. 4.) He argues that it cannot be determined as a matter of law that, under the circumstances alleged in the complaint, the defendants did not engage in negligent conduct.
In analyzing actions for negligence regarding evaluations of educational performance, the Superior Court generally refers toGupta v. New Britain General Hospital, supra, 239 Conn. 574. SeeScalzi v. Mead School for Human Development, Superior Court, judicial district of Stamford Complex Litigation Docket, Docket No. 148213 (June 4, 1999, Tierney, J.) (24 Conn. L. Rptr. 662, 663); Wightwood School v. Fritz, supra, Superior Court, Docket No. 410060 (24 Conn. L. Rptr. 351); Bell v. West Haven Board ofEducation, Superior Court, judicial district of New Haven at New Haven, Docket No. 399597 (December 23, 1997, Hartmere, J.) (21 Conn. L. Rptr. 507, 508), aff'd, 55 Conn. App. 400, 739 A.2d 321
(1999); Doe v. Yale University School of Medicine, Superior CT Page 3317 Court, judicial district of New Haven at New Haven, Docket No. 305365 (December 1, 1997, Silbert, J.) (21 Conn. L. Rptr. 92). InGupta v. New Britain General Hospital, supra, 239 Conn. 574, the plaintiff, a surgical resident, was dismissed from a hospital's program due to his inadequate clinical performance. The plaintiff claimed that the hospital's conduct violated the residency agreement he had with the hospital and that the hospital failed to provide him with proper training. The Supreme Court first determined that the circumstances at issue involved the parties' educational relationship rather than their employment relationship.[3] Id., 589. The court then examined the plaintiffs allegations in light of educational malpractice cases, which it defined as cases in which "a plaintiff sues . . . [an] academic institution for tortiously failing to provide adequate educational services . . . or for tortiously failing to diagnose educational impediments." (Citations omitted; emphasis in original.) Id., 591 n. 15. The court rejected the plaintiffs cause of action for breach of contract and explained, "[i]n reality, a claim such as that advanced by the plaintiff raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students — questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts. . . . Because these tort principles are difficult, it not impossible, to apply in the academic environment, courts have almost universally held that claims of "educational malpractice are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. . . . In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." (Citations omitted; internal quotation marks omitted.) Gupta v. New Britain General Hospital, supra,239 Conn. 590-91.
Here, in count four, the plaintiff restates his breach of contract claim as a negligence claim against Gister. He alleges that Gister was negligent in supervising his education and that the education services he received from Gister were inadequate. In essence, count four is a claim for educational malpractice. "In Gupta v. New Britain General Hospital . . . our Supreme Court joined the vast majority of other states that have rejected the CT Page 3318 tort of educational malpractice." Bell v. West Haven Board ofEducation, 55 Conn. App. 400, 408, 739 A.2d 321 (1999). "Although the plaintiffs claim in Gupta was for breach of contract, the court's discussion of tort principles and the associated policy considerations making their application difficult, if not impossible, was essential to its analysis. Implicit in the court's rejection of a breach of contract claim arising from educational services, except in two specific situations, is a rejection of any claim for negligent education or educational malpractice." Scalzi v. Mead School for Human Development, supra, Superior Court, Docket No. 148213 (24 Conn. L. Rptr. 664). Because the Connecticut Supreme Court has refused to recognize a cause of action for educational malpractice sounding in tort, count four is legally insufficient. The motion to strike count four is granted.
Count Six
The defendants contend that count six should be stricken because it fails to allege facts sufficient to state a cause of action for intentional infliction of emotional distress. Specifically, the defendants point out that in order to establish this cause of action, the plaintiff is required to plead and prove all its elements, including the element that the defendants engaged in conduct that was extreme and outrageous. Because the plaintiff failed to allege facts sufficient to satisfy' this element, the defendants argue, this cause of action should be stricken. Although the plaintiff did not address this argument in his memorandum, at oral argument, he conceded that the motion to strike should be granted as to count six. The motion to strike count six is granted.
Count Seven
The defendants contend that count seven, in which the plaintiff alleges a cause of action against Gister for breach of contract, should be stricken because it fails to state a claim upon which relief can be granted and because the plaintiff fails to allege that he and Gister had a contractual relationship. Although the plaintiff did not address these arguments in his memorandum, at oral argument, he conceded that the motion to strike should be granted as to count seven. The motion to strike as to count seven is granted.
Attorney's Fees
CT Page 3319
The defendants move to strike the plaintiffs claim for attorney's fees in counts one, two and five on the grounds that in these counts, the plaintiff has not alleged a contractual or statutory provision which would entitle him to recover such fees.[4] As to counts one and two, in which the plaintiff asserts causes of action for breach of contract and breach of the duty of fair dealing respectively, at oral argument the plaintiff contended that in as much as the court determined that the complaint contains allegations that the defendants' conduct was arbitrary, capricious or in bad faith, these counts support a claim for attorney's fees. The defendants disagreed.
"The general rule of law known as the `American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful litigant absent a contractual or statutory exception." (Internal quotation marks omitted.)Roman v. Johnson, 48 Conn. App. 498, 503, 710 A.2d 186 (1998). "It is well entrenched in our jurisprudence that Connecticut adheres to the American Rule." Doe v. State, 216 Conn. 85, 106,579 A.2d 37 (1990). However, the courts also recognize an exception to this rule. Triangle Sheet Metal Works, Inc. v.Silver, 154 Conn. 116, 127, 222 A.2d 220 (1966). Pursuant to this exception, attorney's fees may be awarded as a component of punitive damages, for causes of action in which such damages are available, in order "to compensate the plaintiff to the extent of his expenses of litigation less taxable costs." Id. Here, the plaintiff fails to cite any contractual or statutory authority for his prayer for attorney's fees. Therefore, he is only entitled to seek attorney's fees as an element of punitive damages, if such damages are available for the causes of action stated in counts one, two and/or five.
As to counts one and two, the resolution of this issue involves a two-part inquiry: Whether punitive damages are available for breach of a contract for educational services or a covenant of good faith and fair dealing related thereto; and if so, whether the conduct of the defendants, as alleged in counts one and two rises to the level of "tortious" conduct.
"Punitive damages [and attorney's fee] are not ordinarily recoverable for breach of contract. . . . This is so because . . . punitive or exemplary damages are assessed by way of punishment, and the motivating basis does not usually arise as a result of the ordinary private contractual relationship. " CT Page 3320 (Citation omitted; internal quotation marks omitted.) Barry v.Posi-Seal International, Inc., 40 Conn. App. 577, 584,672 A.2d 514, cert. denied, 237 Conn. 917, 676 A.2d 1373 (1996). However, [b]reach of contract founded on tortious conduct may allow the award of punitive damages." L. F. Pace Sons. Inc. v. TravelersIndemnity Co., 9 Conn. App. 30, 48, 514 A.2d 766, cert. denied,201 Conn. 811, 516 A.2d 886 (1986).
"In Connecticut, punitive damages are rarely allowed for breach of contract. The single reported case in which an award of punitive damages for breach of contract was upheld is L. F. Pace Sons. Inc., a case in which the plaintiff was damaged by the defendant's breach of its implied contract to issue certain surety bonds." Barry v. Posi-Seal International, Inc., supra,40 Conn. App. 584. In Barry v. Posi-Seal International, Inc., the court declined, with one exception, "to extend the allowance of punitive damages for tortious breach of contract from the area of insurance to the termination of employment." Id., 585. In its decision, the court noted that punitive damages are not available for breach of an "ordinary commercial contract," and that, in extending such damages to breach of insurance contracts, the courts are motivated by "policy considerations" which are particular to the insurer/insured relationship. Id. The court examined the employer/employee relationship, compared it to the insurer/insured relationship and the relationship between parties to an ordinary commercial contract, and concluded that the economic relationship between employer/employee is more closely aligned to the relationship between the parties to commercial contract. Id., 585-87. The court also determined that the employment and insurance relationships are fundamentally distinct in terms of the alignment of the interests of the parties and that "there is less inherent relevant tension between the interests of employers and employees than exists between that of insurer and insured." (Internal quotation marks omitted.) Id., 587. Therefore, the court concluded, "at least where there is no allegation or proof that the termination of employment is violative of an important public policy, punitive damages cannot be recovered on a claim that a termination constituted a breach of the implied covenant of good faith and fair dealing contained in an employment contract." Id. 587-88. Aside from the specific exception for claims involving public policy violations, this decision has been interpreted as limiting "the circumstances under which a plaintiff may assert a tortious breach of contract claim to cases where the plaintiff claimed injury due to an insurer's failure to perform its obligations under a contract." CT Page 3321Chestnut v. Kent, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 346653 (April 17, 1998, Skolnick, J.) (22 Conn. L. Rptr. 29, 32 n. 3); Connecticut EnvironmentalAssociates, Inc. v. Connecticut Resources Recovery Authority, Superior Court, judicial district of New Haven at New Haven, Docket No. 393991 (July 23, 1997, Zoarski, J.) (20 Conn. L. Rptr. 174 n. 1).
In the present case, a comparison of the economic aspects of the school/student relationship to the insurer/insured relationship and the ordinary commercial relationship addition, the interests of the parties to a school/student relationship are more closely aligned than those of the parties to a insurer/insured relationship. This court declines to extend the availability of punitive damages to causes of action for tortious breach of contract and breach of the covenant of good faith when these actions arise in the context of the termination of educational services. See Ricotta v. Drummond, Superior Court, judicial district of Danbury, Docket No. 324047 (February 25, 1997, Stodolink, L.) (because facts bear no resemblance to those of L. F. Pace Sons, Inc., prayer for punitive damages is inappropriate and is stricken). As to counts one and two the motion to strike the claim for attorney's fees is granted.
In count five, the plaintiff states a claim against Gister for negligent misrepresentation. He claims that Gister was aware that the plaintiffs standing at the school was in jeopardy and was involved with the school's plan to dismiss him. He alleges that Gister "negligently misrepresented the plaintiffs standing at the school to the plaintiff by assuring him that he was making adequate progress, and failing to let him know that concerns about his performance had risen to such a level as to warrant dismissal from the program." (Complaint, 6 ¶ 32.)
As to a cause of action based in tort, "in order to award punitive damages, the evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." West Haven v. Hartford Ins. Co.,221 Conn. 149, 160, 602 A.2d 988 (1992). "Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . If this element is present, an actual intention to do harm to the plaintiffs is not necessary." (Citations omitted; internal quotation marks omitted.) Id., 160-61. CT Page 3322
Here, in count five and in the surviving counts incorporated therein, the plaintiff alleges that he was injured as a result of conduct by Gister, which he generally characterizes as failure to notify and negligent misrepresentations. (Complaint, ¶¶ 15, 33.) These allegations sound in negligence, not recklessness. The plaintiff does not allegate that Gister engaged in any conduct that rises to the level of reckless indifference to or wilful and wanton violation of the plaintiffs rights. The plaintiffs claim for attorney's fees in count five is stricken.
Punitive Damages
The defendants contend that the court should strike that plaintiff's claim for punitive damages in count three because the plaintiff fails to allege facts that would support a claim for such damages.[5] At oral argument, the plaintiff argued that the conduct alleged in count three is sufficient to support a claim for punitive damages. In count three, which contains the plaintiffs CUTPA claim, the plaintiff incorporates the allegations of counts one and two and adds that he was injured as a "result of the school's wilful failure to provide the plaintiff with notice of deficiencies so serious as to warrant to lead to dismissal. . . ." (Complaint, ¶ 23.)
CUTPA provides that "[t]he court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." General Statutes § 42-110g (a);Saturn Construction Co. v. Premier Roofing Co., Inc.,238 Conn. 293, 311, 680 A.2d 1274 (1996). "The standard for awarding punitive damages under CUTPA was set forth in Gargano v. Heyman,203 Conn. 616, 622, 525 A.2d 1343 (1987), where we explained, "[i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights."' (Internal quotation marks omitted.) Tessmann v. Tiger Lee Construction Co.,228 Conn. 42, 54, 634 A.2d 870 (1993).
Having concluded the plaintiff has alleged a viable CUTPA claim in count three, whether the evidence offered thereunder is sufficient to support a claim for punitive damages under CUTPA is beyond the scope of this motion. The defendants' motion to strike the plaintiffs claim for punitive damages in count three is denied. CT Page 3323
Licari, J.